## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **KWAKU AGYIN,** | § | |
| **TDCJ No. 01853987,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil No. SA-19-CA-0548-OLG** |
| | § | |
| **LORIE DAVIS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Kwaku Agyin's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Lorie Davis's Answer (ECF No. 11), and Petitioner's Reply (ECF No. 15) thereto. Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

## I. Background

In October 2012, a Bexar County jury found Petitioner guilty of one count of murder, three counts of compelling prostitution, three counts of trafficking, two counts of sexual assault of a child, and one count of aggravated sexual assault of a child. The facts concerning these offenses were accurately summarized by the Texas Fourth Court of Appeals as follows:

> The State presented evidence that on or about September 17, 2011, C.B., then fifteen years of age, performed oral sex and had sexual intercourse with [Petitioner]. C.B. testified [Petitioner] asked to see her "head game," referring to oral sex, and she subsequently performed oral sex on him. In addition to oral sex, C.B. also testified she and [Petitioner] engaged in sexual intercourse during the

same encounter.  By his own admission, [Petitioner] admitted to engaging in oral sex and sexual intercourse with C.B. after C.B. told him she was nineteen years of age. […]

* * *

C.B. testified [Petitioner] transported her to several locations to locate men for her to have sex with.  She also testified [Petitioner] appropriated the money she received for performing these sex acts.  Her testimony was corroborated by Desiree Wilson, who testified [Petitioner] was planning to "protect [C.B.] . . . while she did what she did," referring to [Petitioner]'s plans to "pimp" C.B. Wilson also testified she witnessed [Petitioner] assault C.B. then take the money C.B. obtained from prostituting herself. […]

* * *

C.B. testified she witnessed [Petitioner] shoot and kill Marcus Anderson. Her testimony described how [Petitioner] and three other individuals conspired to rob Anderson after forcing C.B. to lure Anderson to their location.  C.B. testified once Anderson arrived at the motel, a fight ensued and [Petitioner] shot and killed Anderson as he attempted to fight off the robbery attempt.  In addition to C.B.'s testimony regarding the murder, Wilson also testified about what [Petitioner] told her.  During a phone conversation regarding the motel incident, Wilson testified [Petitioner] stated, "something went wrong," and "[Petitioner] had to shoot the guy."  Finally, the State presented forensic evidence in the form of firearms analysis conducted by the Bexar County Crime Lab.  The forensic scientist testified the bullets retrieved from Anderson's body were 25 caliber bullets and narrowed the make of the murder weapon to one of five gun manufacturers. When shown State's Exhibit No. 7, a Raven Arms 25 caliber semi-automatic pistol, the forensic scientist confirmed the gun was one of the possible murder weapons.  C.B. confirmed State's Exhibit No. 7 matched the type of gun [Petitioner] had previously shown her and subsequently used to kill Anderson. […]

(ECF No. 9-22).  Petitioner elected to have the trial judge assess punishment who, after a separate punishment hearing, imposed the following sentences: (1) twenty-five years of imprisonment for each count of compelling prostitution and twenty years of imprisonment for each count of trafficking,[1] (2) twenty-five years of imprisonment for the one count of aggravated sexual assault of a child and twenty years of imprisonment for each count of sexual assault of a

---

[1]     *State v. Agyin*, No. 2011-CR-10948 (437th Dist. Ct., Bexar Cnty., Tex. Oct. 29, 2012) (ECF No. 9-40 at 91-102).

child,[2] and (3) life imprisonment for the one count of murder.[3]  These sentences are all to run concurrently.

Petitioner appealed to the Texas Fourth Court of Appeals which affirmed the convictions in an unpublished opinion dated October 30, 2013.  *Agyin v. State*, Nos. 04-12-00749-CR, 04-12-00750-CR, and 04-12-00751-CR, 2013 WL 5864483, at *2-3 (Tex. App.—San Antonio, Oct. 30, 2013, pet. ref'd); (ECF No. 9-22 at 3-5).  The Texas Court of Criminal Appeals (TCCA) then refused his petition for discretionary review (PDR) on March 12, 2014.  *Id*.; *Agyin v. State*, Nos. 1673-13, 1674-13, and 1675-13 (Tex. Crim. App. 2014).

In April 2015, Petitioner filed a state habeas corpus application challenging only the constitutionality of his state court murder conviction.  *Ex parte Agyin*, No. 85,028-01 (Tex. Crim. App.); (ECF No. 9-101 at 27).  Petitioner later filed a second state habeas corpus application in January 2018 challenging his sexual assault convictions and a third application in May 2018 challenging his convictions for compelling prostitution and trafficking.  *Ex parte Agyin*, Nos. 85,028-02, -03 (Tex. Crim. App.); (ECF Nos. 9-112 at 21, 9-127 at 21).  The TCCA eventually denied each of these applications without written order on April 3, 2019.  (ECF Nos. 9-61, 9-105, and 9-124).

Petitioner initiated the instant federal proceedings on May 20, 2019.  (ECF No. 1 at 10). In the petition, Petitioner challenges the constitutionality of each of his ten convictions by raising several ineffective-assistance-of-trial-counsel (IATC) allegations.  Specifically, with regard to his murder conviction, Petitioner claims counsel was ineffective for failing to: (1) interview and

---

[2]      *State v. Agyin*, No. 2011-CR-10947 (437th Dist. Ct., Bexar Cnty., Tex. Oct. 29, 2012) (ECF No. 9-2 at 104-09).

[3]      *State v. Agyin*, No. 2012-CR-0469 (437th Dist. Ct., Bexar Cnty., Tex. Oct. 29, 2012) (ECF No. 9-24 at 179-80).

call an alibi witness, (2) request a continuance, (3) request an accomplice-witness instruction, and (4) object to inadmissible expert testimony.  With regard to his three sexual assault convictions, Petitioner contends counsel was ineffective for failing to: (5) challenge the constitutionality of the underlying statutes regarding sexual assault and aggravated sexual assault, (6) request an instruction on the "mistake of age" defense, and (7) object to the prosecution's misstatement of the law.  And concerning his six convictions for trafficking and compelling prostitution, Petitioner claims counsel was ineffective for (8) failing to request an instruction on causation.  Finally, Petitioner requests an evidentiary hearing to help further develop the claims raised in his federal petition.

## II. <u>Standard of Review</u>

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established

federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Analysis

A. __Petitioner's Murder Conviction__ (Claims 1-3).

Petitioner's first three allegations assert that his trial counsel was ineffective in representing him on his murder charge in cause No. 2012-CR-0469. Specifically, Petitioner contends trial counsel failed to: (1) interview and call his girlfriend, Keishon "Kiki" Sheppard, as an alibi witness, (2) request a continuance in order to interview Sheppard, or (3) request an accomplice-witness instruction regarding C. B.'s testimony.

As discussed below, each of these claims were raised and rejected during Petitioner's state habeas proceedings, and Petitioner fails to demonstrate the state habeas court's rejection of

these allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.  Federal habeas relief is therefore denied.

    1.    The *Strickland* Standard

The Court reviews Sixth Amendment IATC claims under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.  466 U.S. at 687-88, 690.  According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.  *Strickland,* 466 U.S. at 687-89.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).  To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Under this prong, the "likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.  A habeas petitioner has the burden of proving both prongs of the *Strickland* test.  *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).  Where, as here, the state court adjudicated the IATC claims

on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d).  *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009).  In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable."  *Richter*, 562 U.S at 101.  That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*. at 105.

2.    <u>Failure to Investigate</u> (Claims 1, 2).

Petitioner first asserts that counsel was ineffective for failing to interview or call his girlfriend, Kiki Sheppard, as an alibi witness.  According to Petitioner, Sheppard would have corroborated his assertion that he was with her the night Marcus Anderson was murdered and thus could not have committed the offense.  Petitioner also faults counsel for not requesting a continuance in order to locate and interview Sheppard.

Petitioner raised these allegations during his state habeas proceedings.  In response, trial counsel submitted an affidavit wherein he addressed Petitioner's assertions of ineffective assistance:

> Ms. Keishon ( Kiki) Sheppard and her brother Thomas Sheppard were co-conspirators with [Petitioner] and very much involved in the murder of Mr. Marcus Anderson and the trafficking for purposes of prostitution of the State's witness/complainant [C.B.].  The investigator appointed by the court to help in the preparation of the defense and I both tried to contact Ms. Sheppard.  We were unsuccessful.  I talked to [Petitioner] about both Thomas and Keishon Sheppard and we agreed that testimony from either would do great harm to the defense.

> \* \* \*

> Keishon Sheppard, [C.B.], and Desiree Wilson were not witnesses that could have provided [Petitioner] with a defense.  The record clearly shows that of

7

[C.B.] and Ms. Wilson.  Ms. Sheppard was a suspect and co-conspirator in the murder of Marcus Anderson and the trafficking of [C.B.].

(ECF No. 9-103 at 82-83).  The state habeas trial court found trial counsel's affidavit truthful and credible and concluded that counsel's strategic decision not to call Sheppard as a witness was reasonable.  *Id.* at 102-03.  These findings and conclusions were adopted by the TCCA when it denied Petitioner's state habeas application.  (ECF No. 9-61).  These determinations, including the trial court's credibility findings and finding that counsel's choices were strategic, are entitled to a presumption of correctness unless they lack fair support in the record.  *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Petitioner fails to show that the state court's ruling on trial counsel's investigation and strategy was contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record.  *Strickland* requires counsel to undertake a reasonable investigation.  466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013).  Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case.  *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013).  But in assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed in light of the defendant's own statements and actions.  *Strickland*, 466 U.S. at 691.  This wide latitude given to trial counsel includes the discretion to determine how best to utilize limited investigative resources available.  *Richter*, 562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.").

In this case, trial counsel's affidavit—adopted by the state habeas court and ultimately by the TCCA—explained that he and his investigator attempted to contact Sheppard but were

unsuccessful.  Counsel then explained that any further investigation into using Sheppard as an alibi would be fruitless because Sheppard was a suspect and co-conspirator in the murder and thus her testimony would likely be harmful.  According to counsel, Petitioner agreed with this assessment.  Petitioner has not pointed to any evidence rebutting counsel's assertions, much less demonstrated that state court's ruling on trial counsel's investigation and strategy "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

Furthermore, a petitioner's unsupported claims regarding an uncalled witness "are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel."  *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  To prevail on an IATC claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense.  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007).

Here, Petitioner refers to the affidavit given by Sheppard during his state habeas proceedings as evidence that counsel's investigation was deficient.  According to the affidavit, Petitioner was with Sheppard for several hours while she got a tattoo on the night of the murder.  (ECF No. 9-79).  But while Sheppard's affidavit may "delineate the content of [her] proposed testimony," it does not demonstrate that she was available (or willing) to testify at Petitioner's trial or that her testimony would have been favorable.  *Day*, 566 F.3d at 538.  Indeed, given that Sheppard was herself a suspect in the crimes against C.B. and Marcus Anderson, it is unlikely that she would be willing to testify or that her testimony would be favorable to Petitioner's

defense.  As a result, Petitioner has not shown counsel's performance was deficient or that the state court's denial of this claim was an unreasonable application of *Strickland*.

Regardless, even if Petitioner could establish that counsel's performance in this case constituted deficient performance, he still fails to demonstrate that the alleged error was prejudicial to his defense.  Again, to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "[A] court assessing prejudice must consider the totality of the evidence before the judge or jury."  *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 696) (internal quotation marks omitted).

Petitioner has not established that the alleged error was prejudicial because, as the record demonstrates, the State's case was strong and there was substantial evidence establishing Petitioner's guilt.  *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (noting the weight of the evidence of guilt in finding alleged deficient performance of counsel not prejudicial); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008).  This evidence included the testimonies of C.B. and Desiree Wilson, as well as the corroborating evidence presented through the testimony of Detective Pete Sweeney and the firearms analysis conducted by the Bexar County Crime Lab.

Given the overwhelming nature of the evidence against Petitioner, there is simply no reasonable probability that the jury would have voted to acquit Petitioner had counsel investigated further and presented Sheppard as a witness as he now contends.  As such, Petitioner is unable to establish that counsel's performance was deficient or that he was prejudiced by counsel's alleged errors.  Because Petitioner fails to demonstrate that the state

court's denial of Petitioner's IATC allegations was not an unreasonable application of *Strickland*, relief on these claims is therefore denied.

3.     <u>Accomplice-Witness Instruction</u> (Claim 3).

Petitioner next argues his trial counsel was ineffective for failing to request an accomplice-witness instruction concerning the testimony of C.B., whose testimony indicated that she drew the victim to her motel on the night of the murder and had previously attempted to have Petitioner robbed.  According to Petitioner, counsel's failure to request an accomplice-witness instruction allowed the jury to view C.B. as a victimized eyewitness as opposed to being skeptical about her testimony.

Petitioner raised this allegation during his state habeas proceedings.  As with the previous allegation, trial counsel responded to Petitioner's assertions in his affidavit to the state habeas trial court:

> The State's main witness to the murder of Mr. Marcus Anderson was [C.B.].  The evidence admitted at trial did not support the request for an instruction in the Charge to the jury that [C.B.] was either an accomplice at law or by fact to be determined by the jury.  The testimony clearly showed that she was a victim of [Petitioner]—[Petitioner] was convicted of the Aggravated Sexual Assault, Sexual Assault, and Trafficking of [C.B.]—and that any action she took to lure Marcus Anderson to the Skyline Motel ([C.B.] called Marcus Anderson to come to the Motel) was not voluntary and done only in response to threats by [Petitioner] and co-conspirator Keishon (Kiki) Sheppard.

(ECF No. 9-103 at 82).  The state habeas trial court found trial counsel's affidavit credible and agreed that, "based on the law and facts of this case, [Petitioner] was not entitled to an accomplice witness instruction."  *Id*. at 104.  These findings and conclusions were then adopted by the TCCA.  (ECF No. 9-61).

Petitioner fails to show that the state court's ruling was contrary to, or involved an unreasonable application of *Strickland*.  Trial counsel generally have broad discretion when it comes to deciding how best to proceed strategically, and such choices, made after a thorough

investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015) (noting the Supreme Court has emphasized counsel has "wide latitude in deciding how best to represent a client."). Moreover, counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).

Here, the record indicates counsel made a reasonable strategic decision to avoid seeking an accomplice-witness instruction for C.B. While Texas law does require an accomplice-witness instruction—either as a matter of law or a matter of fact—in certain circumstances, a "defendant is entitled to an accomplice-witness instruction if and only if 'there is sufficient evidence in the record to support a charge against the witness alleged to be an accomplice.'" *Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999) (quoting *Blake v. State*, 971 S.W.2d 451, 454-455 (Tex. Crim. App. 1998)). Petitioner does not point to any evidence in the record demonstrating that C.B. was an accomplice to the charged offense or that the trial court would have granted a request for an accomplice-witness instruction if such a request had been made. And neither Petitioner's trial counsel nor the state habeas trial court believed sufficient evidence existed to treat C.B. as an accomplice-witness.

The Court does not disagree with these assessments. Thus, based on this record, Petitioner does not demonstrate that trial counsel was deficient for not requesting an unwarranted jury instruction or that the result of his trial would have been different if he had. In other words, Petitioner has not demonstrated that the state habeas corpus court's rejection of this claim was

unreasonable. Consequently, viewing this allegation under the "doubly" deferential review encompassed by *Strickland* and the AEDPA, Petitioner's claim cannot survive. *See Richter*, 562 U.S at 105.

**B.    Petitioner's Fourth IATC Claim is Procedurally Defaulted (Claim 4).**

In his fourth IATC allegation, Petitioner contends counsel was ineffective for failing to object to inadmissible expert testimony from Detective Pete Sweeney concerning his opinion of C.B.'s character for truthfulness.  Petitioner also faults counsel for failing to object when the State cross-examined his own witness, Detective Lisa Miller, on the same subject.  In her answer, Respondent contends these allegations are unexhausted and procedurally barred from federal habeas corpus relief because Petitioner never raised them in state court.  Respondent is correct.

Before seeking review in federal court, a habeas corpus petitioner must first present his claims in state court and exhaust all state court remedies through proper adjudication on the merits.  *See* 28 U.S.C. § 2254(b)(1)(A) (stating that habeas corpus relief may not be granted "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").  The exhaustion requirement is satisfied if the substance of the federal habeas claim was presented to the highest state court in a procedurally proper manner. *Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002).  In Texas, the highest state court for criminal matters is the TCCA, and a prisoner must present the substance of his claims to the TCCA in either a petition for discretionary review or an application for writ of habeas corpus under Texas Code of Criminal Procedure Article 11.07.  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998); *Bautista v. McCotter,* 793 F.2d 109, 110 (5th Cir. 1986).

The record in this case confirms that Petitioner has not presented these allegations to the TCCA in any of his state habeas corpus applications or in his petition for discretionary review. Because the allegations are being presented for the first time in this federal habeas proceeding, they are unexhausted under § 2254(b) and procedurally barred from federal habeas review.

"A procedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (citation and internal quotation marks omitted). Petitioner failed to exhaust state court remedies with regard to the instant allegations. Should the Court now require Petitioner to return to state court to satisfy the exhaustion requirement, however, the TCCA would find the claim procedurally barred under the abuse of the writ doctrine found in Article 11.07 § 4 of the Texas Code of Criminal Procedure. Because Texas would likely bar another habeas corpus application by Petitioner, he has committed a procedural default that is sufficient to bar federal habeas corpus review. *See, e.g., Bagwell v. Dretke*, 372 F.3d 748, 755-56 (5th Cir. 2004) (holding a petitioner procedurally defaulted by failing to "fairly present" a claim to the state courts in his state habeas corpus application); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002) (holding unexhausted claims were procedurally barred); *Jones v. Johnson*, 171 F.3d 270, 276-77 (5th Cir. 1999) (same).

Consequently, Petitioner is precluded from federal habeas review of this claim unless he can show cause for the default and resulting prejudice, or demonstrate that the Court's failure to consider his claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Busby v. Dretke,* 359 F.3d 708, 718 (5th Cir. 2004). Petitioner does not argue that cause and prejudice should excuse the default in his federal petition, nor does

he attempt to demonstrate that the Court's denial of the claim will result in a "fundamental miscarriage of justice." Thus, circuit precedent compels the denial of Petitioner's fourth claim as procedurally defaulted.

**C.    Petitioner's Remaining Claims Are Time-barred (Claims 5-8).**

Respondent contends that the remainder of the allegations in Petitioner's federal habeas petition—i.e., the claims that do not concern his murder conviction—are barred by the one-year limitation period of 28 U.S.C. § 2244(d). Section 2244(d) provides, in relevant part, that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

In this case, Petitioner's convictions became final June 10, 2014, ninety days after the TCCA refused his PDR and when the time for filing a petition for writ of certiorari to the United States Supreme Court expired. *See* Sup. Ct. R. 13; *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) ("§ 2244(d)(1)(A) . . . takes into account the time for filing a certiorari petition in determining the finality of a conviction on direct review"). As a result, the limitations period under § 2244(d) for filing a federal habeas petition challenging his underlying convictions and sentences expired a year later on June 10, 2015. Because Petitioner did not file his § 2254 petition until May 20, 2019—almost four years after the limitations period expired—his entire petition would be barred by the one-year statute of limitations unless it is subject to either statutory or equitable tolling.

1.    <u>Statutory Tolling</u>

Petitioner does not satisfy any of the statutory tolling provisions found under 28 U.S.C. § 2244(d)(1).  There has been no showing of an impediment created by the state government that violated the Constitution or federal law which prevented Petitioner from filing a timely petition. 28 U.S.C. § 2244(d)(1)(B).  There has also been no showing of a newly recognized constitutional right upon which the petition is based, and there is no indication that the claims could not have been discovered earlier through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(C)-(D).

Petitioner is, however, entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) for the claims regarding his murder conviction.  Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  As discussed previously, Petitioner challenged his murder conviction in his first state habeas application signed April 4, 2015, which was later denied by the TCCA on April 3, 2019.  Accordingly, Petitioner's first state habeas application tolled the limitations period for challenging his murder conviction for a total of 1,461 days, making any federal challenge to his state murder conviction due on June 10, 2019.  Because Petitioner filed his federal petition on May 20, 2019, the claims concerning his state murder conviction are timely.

Petitioner's remaining allegations concerning his convictions for trafficking, compelling prostitution, and sexual assault do not meet the same fate.  This is because Petitioner did not challenge these convictions in his first state habeas application, but instead waited until his second and third applications to raise allegations concerning these convictions.  But Petitioner did not execute his second and third state habeas applications until 2018, several years after the

limitations period expired.  Because these applications were filed well after the time for filing a federal petition under § 2244(d)(1) had lapsed, they do not toll the one-year limitations period. *See* 28 U.S.C. § 2244(d)(2); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).  Consequently, Petitioner's limitations period for challenging his non-murder convictions in a federal habeas petition still expired June 10, 2015.  Again, he did not file the instant § 2254 petition until May 20, 2019—almost four years late.

      2.   <u>Equitable Tolling</u>

In some cases, the limitations period may be subject to equitable tolling.  The Supreme Court has made clear that a federal habeas corpus petitioner may avail himself of the doctrine of equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013); *Holland v. Florida*, 560 U.S. 631, 649 (2010).  However, equitable tolling is only available in cases presenting "rare and exceptional circumstances," *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002), and is "not intended for those who sleep on their rights."  *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012).

Petitioner has not demonstrated that he diligently pursued habeas relief for his non-murder convictions during the limitations period.  Instead, Petitioner waited ten months into his limitations period to file his first state habeas corpus application, but chose to only challenge one of his ten state court convictions—the murder conviction.  He then waited almost three years to file his second state habeas corpus application challenging his sexual assault convictions and then another four months before he challenged the remaining convictions in his third state habeas application.  Moreover, Petitioner fails to establish that any extraordinary circumstances prevented him from challenging these convictions earlier.  "Equitable tolling applies principally

where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson,* 184 F.3d 398, 402 (5th Cir. 1999) (internal quotation and citation omitted).  Petitioner makes no argument that either situation occurred.  Consequently, because Petitioner does not assert any specific facts showing that he was prevented, despite the exercise of due diligence on his part, from timely filing his allegations in this Court, his fifth, sixth, seventh, and eighth allegations for relief are untimely and barred by § 2244(d)(1).

       3.    <u>Actual Innocence</u>

In his Reply, Petitioner contends these allegations should not be barred by the limitations period because he is actually innocent of the crimes for which he was convicted.  In *McQuiggin*, 569 U.S. at 386, the Supreme Court held that a prisoner filing a first-time federal habeas petition could overcome the one-year statute of limitations in § 2244(d)(1) upon a showing of "actual innocence" under the standard in *Schlup v. Delo,* 513 U.S. 298, 329 (1995).  But "tenable actual-innocence gateway pleas are rare," and, under *Schlup*'s demanding standard, the gateway should open only when a petitioner presents new "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  *McQuiggin*, 569 U.S. at 386, 401 (*quoting Schlup,* 513 U.S. at 316).  In other words, Petitioner is required to produce "*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"—sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Schlup,* 513 U.S. at 324.

Petitioner does not meet this demanding standard.  Although he refers to the IATC claims raised in the federal petition and the evidence presented to support it, Petitioner's argument and

supporting evidence do not constitute "*new reliable* evidence" establishing his innocence. Indeed, Petitioner's arguments were already rejected by the state court during Petitioner's state habeas proceedings and do not undermine confidence in the outcome of his trial.  Consequently, the untimeliness of Petitioner's federal habeas petition with regard to his non-murder convictions will be not excused under the actual-innocence exception established in *McQuiggin*.

## IV.  Motion for Evidentiary Hearing

Lastly, Petitioner requests an evidentiary hearing (ECF No. 1-1) to challenge the state court's resolution of his claims for relief.  His request is denied, as habeas petitioners are not entitled to a federal evidentiary hearing to develop new evidence to attack the state court's resolution of their claims.  *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").  Under the AEDPA, the proper place for development of the facts supporting a claim is the state court.  *See Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding the AEDPA clearly places the burden on a petitioner to raise and litigate as fully as possible his federal claims in state court).  Thus, as in this case, when a petitioner's claims have been rejected on the merits by the state courts either on direct appeal or during petitioner's state habeas corpus proceeding, further factual development in federal court is effectively precluded.  *Pinholster*, 563 U.S. at 181-88 (2011) (holding an evidentiary hearing is unnecessary when a state court has rejected a claim on the merits and federal habeas review of that rejection is governed by §2254(d)(1)); *Woodfox v. Cain*, 772 F.3d 358, 368 (5th Cir. 2014) ("The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under § 2254(d)(1), the record is limited to the one before the state court, even if the state court issued a summary affirmance.").

Likewise, where a federal habeas corpus petitioner's claims lack merit on their face, further factual development is not necessitated. *See Register v. Thaler*, 681 F.3d 623, 627-30 (5th Cir. 2012) (recognizing the discretion inherent in district courts to allow factual development, especially when confronted with claims foreclosed by applicable legal authority). "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Richards v. Quarterman*, 566 F.3d 553, 562 (5th Cir. 2009) (quoting *Schriro v. Landrigan,* 550 U.S.465, 468 (2007)). "In determining whether to grant a hearing, under Rule 8(a) of the Habeas Court Rules 'the judge must review the answer [and] any transcripts and records of state-court proceedings . . . to determine whether an evidentiary hearing is warranted.'" *Richards*, 566 F.3d at 562-63 (*quoting Hall v. Quarterman,* 534 F.3d 365, 368 (5th Cir. 2008)). In making this determination, courts must consider whether an evidentiary hearing could "enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Richards*, 566 F.3d at 563 (*quoting Schriro*, 550 U.S. at 474).

The only claim before the Court that was not adjudicated on the merits in state court is Petitioner's fourth claim for relief which, as discussed previously, is procedurally barred from federal habeas corpus relief. Moreover, as discussed throughout this opinion, Petitioner's remaining allegations lack merit on their face. Further factual development is therefore unnecessary. *Register*, 681 F.3d at 627-30.

## V. <u>Certificate of Appealability</u>

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322,

335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has explained that the showing required under § 2253(c)(2) is straightforward when a district court has rejected a petitioner's constitutional claims on the merits:  The petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller–El*, 537 U.S. at 336 (citation omitted).

The issue becomes somewhat more complicated when the district court denies relief on procedural grounds.  *Id.*  In that case, the petitioner seeking COA must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (citing *Slack,* 529 U.S. at 484)  In that case, a COA should issue if the petitioner *not only* shows that the lower court's procedural ruling is debatable among jurists of reason, but also makes a substantial showing of the denial of a constitutional right.

A district court may deny a COA *sua sponte* without requiring further briefing or argument.  *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief.  As such, a COA will not issue.

## VI.  **Conclusion and Order**

After careful consideration, the Court concludes that Petitioner's fourth allegation is procedurally barred from federal habeas review and Petitioner's fifth, sixth, seventh, and eighth allegations are barred from federal habeas corpus relief by the statute of limitations set forth in 28 U.S.C. § 2244(d).  The Court also concludes Petitioner has failed to establish that the state court's rejection of Petitioner's first three allegations on the merits during his state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial and habeas corpus proceedings.  Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.    Federal habeas corpus relief is **DENIED** and Petitioner Kwaku Agyin's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.    Petitioner's Motion for Evidentiary Hearing (ECF No. 1-1) is **DENIED**;

3.    No Certificate of Appealability shall issue in this case; and

4.    All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this the ___7th___ day of August, 2020.

_____
**ORLANDO L. GARCIA**
**Chief United States District Judge**

22